UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: JOSEPHINE JONES, DEBTOR                              CASE NO. 03-11065-DWH

JOSEPHINE JONES                                              PLAINTIFF

VERSUS                                              ADV. PROC. NO. 08-1068-DWH

WALTER MORTGAGE COMPANY,
MID-STATE HOMES, INC., and
BEST INSURORS, INC.                                         DEFENDANTS

## OPINION

On consideration before the court are the following, to-wit:

1. Second Motion to Amend Class Action Complaint filed by the plaintiff/debtor, Josephine Jones (Jones).

2. Second Motion for Class Certification filed by Jones.

3. Responses to both of the aforesaid motions having been filed by the defendants, Walter Mortgage Company, (Walter Mortgage), Mid-State Homes, Inc., (Mid-State Homes), and Best Insurors, Inc., (Best Insurors).

The court, having heard and considered same, hereby finds as follows, to-wit:

I.

## JURISDICTION

The court has jurisdiction of the parties to and the subject matter of this adversary proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A) and (O).

## II.

## FACTUAL STATEMENT

As a part of a building contract, Jones executed a promissory note and deed of trust on July 24, 2000, in favor of Jim Walter Homes, Inc., which was secured by her residential real property. The promissory note and deed of trust were initially assigned by Jim Walter Homes, Inc., to Mid-State Homes and, ultimately, through several other assignments to Walter Mortgage. The proof of claim that was filed in Jones' bankruptcy case designated Mid-State Homes as the secured creditor. In this proceeding, the defendant entities will be considered as one and the same. In this Opinion, they will be referred to as defendants, Walter Mortgage, or Mid-State Homes.

Jones filed a voluntary petition for relief pursuant to Chapter 13 of the Bankruptcy Code on February 20, 2003. Her Chapter 13 plan was confirmed by an order of this court on June 5, 2003. According to the Chapter 13 Trustee's Final Report and Account, Jones paid the debt owed to the defendants through her Chapter 13 plan in conformity with the amounts set forth on the aforementioned proof of claim.

After Jones' plan was confirmed, the defendants acquired hazard insurance covering Jones' property and assessed her account for the premiums related to this coverage over the period that the plan was being administered in the total sum of $4,524.00. None of the defendants ever notified Jones' bankruptcy counsel, the Chapter 13 trustee, or the court of these charges, and never petitioned the court pursuant to Rule 2016(a), Federal Rules of Bankruptcy Procedure, to have these charges approved. The proof of claim was never amended to reflect these additional expenses.

On July 25, 2007, the Chapter 13 Trustee, Locke D. Barkley, filed a motion styled "Trustee's Motion for an Order Declaring 1322(b)(5) Claim of Mid-State Homes Current and Defaults Cured." (the "§1322(b)(5) motion") This motion was noticed to Mid-State Homes and its attorney on the same date, but no response or objection was filed. Consequently, on August 17, 2007, an order was entered by this court finding that the long-term debt of Mid-State Homes was current and that all defaults were cured. (the "§1322(b)(5) order")

Jones received her Chapter 13 discharge on October 10, 2007. Thereafter, on February 12, 2008, Walter Mortgage notified Jones that her account was delinquent in the sum of $4,677.58, as a result of the insurance premiums plus accrued interest. Walter Mortgage demanded that this amount be paid by March 5, 2008.

The demand letter prompted the filing of the original adversary class action complaint against the defendants. Jones asserted that the defendants charged unauthorized fees and expenses to her account in violation of Rule 2016(a), Federal Rules of Bankruptcy Procedure, as well as, that the defendants violated several sections of the Bankruptcy Code and the aforementioned order of this court which had determined that the debt owed to Mid-State Homes was current and that all defaults were cured.

### III.

### PLAINTIFF'S SECOND MOTION TO AMEND AND SECOND MOTION FOR CLASS CERTIFICATION

The plaintiff's motions are closely related. Essentially, the second motion to amend seeks to modify the plaintiff's earlier first amended complaint to define the class which she now seeks to certify pursuant to the second motion for class certification. The plaintiff's most recent class

3

action allegations are set forth as follows:

"Plaintiff brings this class action on her own behalf and on behalf of all similarly situated individuals in the Northern District of Mississippi: (1) who have or who had a residential real estate mortgage originated or serviced by Walter Mortgage Company, or its predecessor, Mid-State Homes, Inc., or a Walter corporate affiliate or Walter-controlled entity; (2) who filed for bankruptcy protection under Chapter 13 of Title 11 of the United States Code between January 1, 1989, and the present; (3) whose residential real estate mortgage accounts were charged expenses by Walter, or its predecessor, Mid-State Homes, or Best Insurors, Inc., or any other Walter corporate affiliate or Walter-controlled entity; (4) which expenses were not disclosed to the court or to the bankruptcy trustee prior to the court's entry of its order deeming current; (5) who have been discharged; (6) who, post-discharge, were subject to an act by Walter to collect any expenses.

Expressly excluded from the class are persons who have individually filed or are maintaining an individual lawsuit against defendants alleging violations of §105 of the Bankruptcy Code. Equally excluded from the class are all officers, directors and employees of defendant Walter Mortgage Company, or its predecessor, Mid-State Homes, Inc., or a Walter corporate affiliate or Walter-controlled entity. Plaintiff reserves the right to expand the Class Period as may be appropriate based upon the evidence uncovered during the course of discovery."

According to the court's understanding, the plaintiff's most recent complaint asserts the following claims against the defendants:

1. The use of §105(a) of the Bankruptcy Code to redress the violation of the court's §1322(b)(5) order which determined that the long-term debt of Mid-State Homes was current and that all defaults were cured.

2. The violation of §506 of the Bankruptcy Code by charging unapproved and undisclosed fees between the date of the filing of the plaintiff's bankruptcy petition and the date of the confirmation of her Chapter 13 plan.

3. The violation of Rule 2016(a), Federal Rules of Bankruptcy Procedure, by charging unapproved and undisclosed fees between the date of the confirmation of the plaintiff's Chapter 13 plan and the date of her bankruptcy discharge.

4. For declaratory and injunctive relief regarding the defendants' conduct referenced in paragraphs 1. through 3. immediately hereinabove.

IV.

Primarily, the plaintiff's complaint is focused on the effect which should be given the court's §1322(b)(5) order. As noted above, this order resulted from the filing of the §1322(b)(5) motion on July 25, 2007, by the Chapter 13 trustee in the plaintiff's bankruptcy case, Locke D. Barkley (Barkley). The opening paragraph of Barkley's motion reads as follows:

> "COMES NOW Trustee, Locke D. Barkley, by and through counsel, and moves this Honorable Court for an Order declaring the claim held by the following named creditor as current, with all defaults cured, that the pre-petition arrearage has been cured and that all post petition payments have been made:"

5

The body of the motion then addresses in paragraph 2. the arrearage claim owed by the plaintiff and then in paragraph 3. the regular monthly mortgage payments which were paid by the trustee. The final paragraph of the motion then reads as follows:

> "WHEREFORE, PREMISES CONSIDERED, the Trustee requests this Court declare that the obligation owing to the above named creditor is current as of July 27, 2007 and that all defaults have been cured."

Barkley's motion was noticed to Mid-State Homes and its attorney, but no response or objection was filed. Consequently, on August 17, 2007, the §1322(b)(5) order was entered by the court determining that the long-term debt was current and that all defaults were cured. This court was of the opinion that this order effectively covered all charges, fees, and assessments that could have arisen in the Chapter 13 debtor's account during the time that the bankruptcy case was pending.

To add clarity to her motion and order, in September, 2008, Barkley revised both documents to more specifically identify the charges that were being addressed by the proceeding. The operative language now reads as follows:

> "Trustee requests an order of this court declaring the claim held by the following named mortgage creditor as current, that the pre-petition arrearage has been cured and that all post-petition payments, advances, charges, expenses, fees, and attorney's fees incurred by Debtor are charged by Creditor during the course of the bankruptcy, have been paid current as of the date stated herein."

The revised motion and order, however, have no application to the current adversary proceeding since they were not identical to the motion and order utilized in the plaintiff's bankruptcy case. Consequently, the date that Barkley began utilizing the revised motion and order would effectively establish a termination date of a class period should a class merit certification.

6

In the Northern District of Mississippi there is a second Chapter 13 trustee, Terre Vardaman (Vardaman), who formerly utilized a §1322(b)(5) motion and order proceeding very similar to that utilized by Barkley. At the hearing on the defendants' Rule 12(b)(6) motion to dismiss, the defendants called Vardaman as a witness. She testified that the defendants herein had no reason to file a response or objection to Barkley's §1322(b)(5) motion. Her testimony was apparently based on her opinion that the §1322(b)(5) motion was directed exclusively to the pre-confirmation arrearages and the regular monthly mortgage payments which were being paid according to the confirmed Chapter 13 plan. Vardaman specifically indicated that she did not intend her §1322(b)(5) procedure to address charges or assessments for force placed insurance premiums. Although the court is not certain, Vardaman's position is perhaps premised on language in her motion which recites that "all defaults have been cured <u>pursuant to the confirmed plan</u>." (emphasis supplied) This language provides a slight dissimilarity between Vardaman's motion and order utilized during this time frame and those utilized by Barkley

Like Barkley, Vardaman also revised her §1322(b)(5) procedures. She added language in her motion and order that neither should be construed or otherwise interpreted to include "the debtor(s)' obligation for the payment of hazard insurance premiums and/or ad valorem taxes due from the debtor(s) to the mortgagee post-petition unless payment for such items was provided for by the debtor(s)' confirmed Chapter 13 plan." Vardaman's revised motion and order are silent as to other charges that frequently arise in a debtor's account during the pendency of a bankruptcy case such as attorney fees, inspection fees, appraisal fees, etc.

Barkley's deposition has now been taken. Her attorney, Jeffrey Collier, testified at the aforementioned hearing concerning the defendants' motion to dismiss. Their testimony, when fully considered and placed in a proper context, is that Barkley, unlike Vardaman, fully intended her original §1322(b)(5) motion to flush out the disclosure of all charges that might have been assessed against the debtor during the administration of the case. Consistent with Barkley's approach, this court is of the opinion that the failure to maintain hazard insurance coverage, which is clearly a contractual obligation, is a "default" as that term is ordinarily defined. How such a failure could not be considered a "default" is puzzling.

The dissimilarity between the original Barkley motion and the Vardaman motion presents a problem that must be resolved before there can be further consideration of class certification. The problem is further accentuated by Vardaman's testimony that the original version of her motion was not intended to implicate undisclosed, unapproved charges for force placed insurance premiums. Consequently, this court is compelled to conclude that <u>potential</u> class members can only be those Chapter 13 debtors whose cases were assigned to trustee Barkley during the time when she utilized the original version of her motion and order. This conclusion affects not only the numerosity requirement of Rule 23(a)(1), Federal Rules of Civil Procedure, but also the definition of the proposed class.

In their memoranda, the plaintiff and the defendants provided both pre-hearing and post-hearing comments and affidavit data regarding the numerosity requirement of Rule 23(a)(1). As a result of the court's conclusion, these offerings are no longer relevant. The class, as presently proposed, cannot be certified because of the disparity in the §1322(b)(5) procedures employed by the two trustees.

8

V.

In this proceeding, the Rule 23(a)(2) and (3) requirements of commonality and typicality are inextricably tied to the requirement for numerosity. The factual events related to the current class representative, Josephine Jones, are not disputed. In the excerpt from Jones' deposition that was furnished to the court, Jones testified that she was aware that insurance was being force placed by the defendants. She acquiesced in this conduct because she was unable to afford the insurance herself. The question that must be answered is whether Jones' circumstances are common and typical to other potential class members. The court is aware of the following scenarios which vary from Jones' circumstances, to-wit:

1.  Unlike Jones, there are at least two debtors, George Hines and Patricia Denise Hines, (Case No. 03-10885, Northern District of Mississippi), who acquired their own hazard insurance at the same time that insurance was being force placed by Walter Mortgage or Mid-State Homes. In the opinion of the court, there is a distinction between a debtor who knowingly acquiesces in having the creditor obtain insurance, and debtors who purchase their own insurance and then later receive a demand letter from the mortgagee who duplicated the debtors' effort because the mortgagee did not comply with the provisions of Rule 2016(a), Federal Rules of Bankruptcy Procedure. Had the mortgagee complied with the requirements of Rule 2016(a), or otherwise notified the Chapter 13 trustee or the attorney representing the debtor that insurance was being force placed, the duplication problem could have been avoided with minimum effort. (In this context, the court would suggest to the parties that they compare the language in the deed of trust executed in favor of Jim Walter Homes, Inc., which relates to the maintenance of insurance and the payment of all collection costs and expenses, to the language that appears in

Exhibit "C" to the building contract also executed in favor of Jim Walter Homes, Inc., entitled "New Construction Insurance Disclaimer Statement.")

2. As evidenced by the attachments to the defendants' memorandum, there are several debtors who resolved their disputes with the defendants once they ascertained that insurance had been forced placed. These are cases where the debtors voluntarily chose to reach an agreement with the defendants rather than litigate as to whether the defendants had violated a bankruptcy statute or rule. These debtors might initially be identified as potential class members, but, once the settlement is ascertained, they would have to be excluded. (Accordingly, these debtors must be screened in any numerosity calculation.)

3. Unlike Jones, perhaps there are debtors who actually benefitted from having insurance force placed, specifically if they sustained a casualty loss that was covered by the insurance.

The court's purpose in making these observations is to alert the parties to this proceeding that the court must consider factors, such as those set forth above, in any decision concerning class certification. The court has no idea whether there are significant numbers of debtors in any of the enumerated categories. The categories, which certainly should not be considered as all inclusive, are identified because they represent potential commonality and typicality problems with Jones' circumstances. However, if debtors like those mentioned do exist, they likely would be excluded from class membership if Jones is indeed the approved class representative. These concerns must be considered and addressed by Jones' attorneys if they elect to present a redefined class for certification.

As noted hereinabove, the proposed class defined in the Second Amended Complaint and the Second Motion for Class Certification cannot be certified. The plaintiff's attorneys will be given a period of 30 days to determine whether they wish to further pursue this matter as a class action.

A separate order will be entered consistent with this opinion.

This the 11th day of June, 2009.

/s/ David W. Houston, III
DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE