UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: JOSEPHINE JONES, DEBTOR                                   CASE NO. 03-11065-DWH

JOSEPHINE JONES                                                              PLAINTIFF

VERSUS                                                                ADV. PROC. NO. 08-1068-DWH

WALTER MORTGAGE COMPANY,
MID-STATE HOMES, INC., and
BEST INSURORS, INC.                                                       DEFENDANTS

OPINION

On consideration before the court is a motion for summary judgment filed by the defendants, Walter Mortgage Company, (Walter Mortgage), Mid-State Homes, Inc., (Mid-State Homes), and Best Insurors, Inc., (Best Insurors); a response to said motion having been filed by the plaintiff/debtor, Josephine Jones, (Jones); and the court, having considered same, hereby finds as follows, to-wit:

I.

JURISDICTION

The court has jurisdiction of the parties to and the subject matter of this adversary proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A) and (O).

II.

FACTUAL STATEMENT

As a part of a building contract, Jones executed a promissory note and deed of trust on July 24, 2000, in favor of Jim Walter Homes, Inc., which was secured by her residential real property. The promissory note and deed of trust were initially assigned by Jim Walter Homes, Inc., to Mid-State Homes and, ultimately, through several other assignments to Walter Mortgage. The proof of claim that was filed in Jones' bankruptcy case designated Mid-State Homes as the secured creditor. In this proceeding, the defendant entities will be considered as one and the same. In this Opinion, they will be referred to as defendants, Walter Mortgage, or Mid-State Homes.

Jones filed a voluntary petition for relief pursuant to Chapter 13 of the Bankruptcy Code on February 20, 2003. Her Chapter 13 plan was confirmed by an order of this court on June 5, 2003. According to the Chapter 13 Trustee's Final Report and Account, Jones paid the debt owed to the defendants through her Chapter 13 plan in conformity with the amounts set forth on the aforementioned proof of claim.

After Jones' plan was confirmed, the defendants acquired hazard insurance covering Jones' property and assessed her account for the premiums related to this coverage over the period that the plan was being administered in the total sum of $4,524.00. None of the defendants ever notified Jones' bankruptcy counsel, the Chapter 13 trustee, or the court of these charges, and never petitioned the court pursuant to Rule 2016(a), Federal Rules of Bankruptcy Procedure, (hereinafter Rule 2016(a)), to have these charges approved. The proof of claim was never amended to reflect these additional expenses.

2

On July 25, 2007, the Chapter 13 Trustee, Locke D. Barkley, filed a motion styled "Trustee's Motion for an Order Declaring 1322(b)(5) Claim of Mid-State Homes Current and Defaults Cured." (the "§1322(b)(5) motion") This motion was noticed to Mid-State Homes and its attorney on the same date, but no response or objection was filed. Consequently, on August 17, 2007, an order was entered by this court finding that the long-term debt of Mid-State Homes was current and that all defaults were cured. (the "§1322(b)(5) order")

Jones received her Chapter 13 discharge on October 10, 2007. Thereafter, on February 12, 2008, Walter Mortgage notified Jones that her account was delinquent in the sum of $4,677.58, as a result of the insurance premiums plus accrued interest. Walter Mortgage demanded that this amount be paid by March 5, 2008.

The demand letter prompted the filing of the original complaint against the defendants. Jones asserted that the defendants charged unauthorized fees and expenses to her account in violation of Rule 2016(a), as well as, that the defendants violated several sections of the Bankruptcy Code and the aforementioned order of this court which had determined that the debt owed to Mid-State Homes was current and that all defaults were cured.

III.

PROCEDURAL DISCUSSION

The plaintiff's most recent complaint asserts the following claims against the defendants:

1. The use of §105(a) of the Bankruptcy Code to redress the violation of the court's §1322(b)(5) order which determined that the long-term debt of Mid-State Homes was current and that all defaults were cured.

3

  2. The violation of Rule 2016(a) by charging unapproved and undisclosed fees between the date of the confirmation of the plaintiff's Chapter 13 plan and the date of her bankruptcy discharge.

  3. For declaratory and injunctive relief regarding the defendants' conduct referenced in paragraphs 1. and 2. immediately hereinabove.

A discussion of the efficacy of this court's §1322(b)(5) order was set forth in Paragraph IV. in an opinion executed by the court on June 11, 2009. That opinion is incorporated herein by reference and the discussion will not be repeated. The court, however, re-adopts the reasoning set forth in that discussion.

Deposition testimony has now established that Jones knew that forceplaced insurance coverage was being obtained by Walter Mortgage Company, as well as, that she acquiesced in this coverage because she could not afford to acquire her own insurance policy. These events were not disclosed to the court, the Chapter 13 Trustee, or to the plaintiff's bankruptcy counsel. In the deed of trust and in Exhibit C. to the building contract entitled, "New Construction Insurance Disclosure Statement," which were both executed in favor of Jim Walter Homes, Inc., Jones contractually agreed to the acquisition of the hazard insurance coverage by the defendants. Additionally, in an effort to save her home, Jones, subsequent to her discharge, began negotiations with the defendants as to a repayment plan to reimburse the defendants for the hazard insurance premiums. Jones further acknowledged that she sustained no monetary damages as a result of the defendants' actions.

The court has pointed out in previous decisions that the factual circumstances that pertain to Jones differ from the factual circumstances that pertain to other Chapter 13 debtors who

entered into loan transactions with these defendants. The following are relevant examples where the defendants filed no Rule 2016(a) application, to-wit:

1.  Debtors George Hines and Patricia Denise Hines, (Case No. 03-10885, Northern District of Mississippi): The debtors acquired their own hazard insurance at the same time that insurance was being forceplaced by Walter Mortgage or Mid-State Homes. The defendants failed to comply with Rule 2016(a) and ignored the §1322(b)(5) motion proceeding and the resulting §1322(b)(5) order. As a consequence, the court disallowed the defendants' claim for forceplaced insurance coverage in its entirety.

2.  Debtor, Jerlene Pryor, (Case No. 02-15429, Northern District of Mississippi): The factual circumstances concerning whether the debtor had knowledge of or acquiesced in the forceplaced insurance coverage were not disclosed to the court. The defendants failed to comply with Rule 2016(a) and ignored the §1322(b)(5) motion proceeding and the resulting §1322(b)(5) order. As a consequence, the court disallowed the defendants' claim for forceplaced insurance coverage in its entirety.

3.  Debtors Johnny Lee Evans and Doris J. Evans, (Case No. 04-13973, Northern District of Mississippi): The debtors and their bankruptcy counsel had notice of the forceplaced insurance coverage and acquiesced in the coverage. In this case, the defendants did not ignore the Chapter 13 trustee's §1322(b)(5) motion, but rather filed a response disclosing that the forceplaced insurance premiums had been assessed to the debtors' account. The court required these debtors to repay the claim for the forceplaced insurance over a period of five years in equal monthly installments bearing interest at the rate of 6% per annum.

In the proceeding currently before the court, similar to examples 1 and 2 hereinabove, the defendants ignored both the §1322(b)(5) motion and the related §1322(b)(5) order. However, unlike examples 1 and 2, but similar to example 3, the debtor herein consented to the forceplaced insurance coverage. Because of these factual variances, the ultimate decision in this proceeding will differ from each of the examples.

The issue before the court is whether the failure of the defendants to comply with the provisions of Rule 2016(a), coupled with their decision to ignore the Chapter 13 trustee's

5

§1322(b)(5) motion and the court's §1322(b)(5) order, mandates a decision disallowing their claim for the hazard insurance premiums which they demanded following the debtor's discharge.

Rule 2016(a) states in pertinent part as follows:

### (a) APPLICATION FOR COMPENSATION OR REIMBURSEMENT

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for the services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared or whether an agreement or understanding exists between the applicant or any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required...

The court is certainly aware that the text of Rule 2016(a) contains the requirement that the creditor must be seeking compensation or reimbursement of necessary expenses "from the estate." In this judicial district, the Chapter 13 confirmation order provides that property of the estate is not revested at confirmation in the debtors. Consequently, the automatic stay is not lifted by operation of law until the plan is completed or until some other "triggering" event occurs. Likewise, the bankruptcy estate and property of the estate remain intact. As such, a post-confirmation, pre-discharge assessment of hazard insurance premiums is an effort to seek compensation or reimbursement of expenses from the bankruptcy estate.

Rule 2016(a) covers reimbursable expenses sought after an estate comes into being and for so long as it remains in existence. *In re Padilla*, 379 B.R. 643, 657 (Bankr. S.D. Tex. 2007). Rule 2016(a) requires that creditors receive approval of their reimbursable expenses. *Id.* "The

court can not administer an estate in a just, speedy, inexpensive, efficient, and equitable manner without requiring creditors to file a Rule 2016(a) application for Reimbursable Expenses that creditors seek to collect post-confirmation. Without Rule 2016(a) applications, the Court can not ensure compliance with §1327(a), protect a debtor's rights under 1322(b)(5), or protect a debtor's right to a "**fresh start**" after completing a chapter 13 plan." *Padilla,* at 659. (Emphasis added.) "[A] creditor's failure to file an application for postpetition fees under Rule 2016(a) means that, as a matter of law, any such postpetition fees are per se unreasonable." *In re Hence,* 2007 WL 4333834, at *8 (Bankr. S.D. Tex. 2007), *citing In re Jones,* 366 B.R. 584, 594-95 (Bankr. E.D. La. 2007).

In this case, the defendants did not comply with either the letter or the spirit of Rule 2016(a) in regard to the hazard insurance premiums. It is certainly not a difficult task to file a Rule 2016(a) application notifying the court and the interested parties that fees or costs are being assessed and requested as a part of the claim.

It is also undisputed that the defendants elected to ignore the Chapter 13 trustee's §1322(b)(5) motion, as well as, the related §1322(b)(5) order entered by the court. Jones' failure to maintain hazard insurance coverage, which is clearly a contractual obligation, is a "default" as that term is ordinarily defined. Why the defendants did not file a simple precautionary response to the trustee's motion, which sought a determination that all defaults were cured, defies logic. The defendants are sophisticated participants in the bankruptcy process and obviously had notice of the motion and the resulting order. The court must therefore presume that the defendants' choice to disregard the §1322(b)(5) order was a deliberate decision.

Jones, however, is not completely blameless. Both the deed of trust and Exhibit "C" to the building contract, which she obviously executed, contain provisions that contemplate the defendants' forceplacing hazard insurance coverage should she fail to acquire coverage on her own behalf. Jones candidly admitted that she consented to the forceplacing because she was unable to afford the insurance herself. Further acknowledging her liability, she commenced negotiations following her discharge to formulate a repayment plan to compensate the defendants for the unpaid premiums. Other than receiving the demand letter to repay this debt, she admitted that she sustained no monetary damages as a result of the defendants' conduct.

IV.

## SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Bankruptcy Rule 7056; Uniform Local Bankruptcy Rule 18. The court must examine each issue in a light most favorable to the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Phillips v. OKC Corp., 812 F.2d 265 (5th Cir. 1987); Putman v. Insurance Co. of North America, 673 F.Supp. 171 (N.D. Miss. 1987). The moving party must demonstrate to the court the basis on which it believes that summary judgment is justified. The nonmoving party must then show that a genuine issue of material fact arises as to that issue. Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.29 265 (1986); Leonard v. Dixie Well Service & Supply, Inc., 828 F.2d 291 (5th Cir. 1987), Putman v. Insurance Co. of North America, 673 F.Supp. 171 (N.D. Miss. 1987). An

issue is genuine if "there is sufficient evidence favoring the nonmoving party for a fact finder to find for that party." <u>Phillips</u>, 812 F.2d at 273. A fact is material if it would "affect the outcome of the lawsuit under the governing substantive law." <u>Phillips</u>, 812 F.2d at 272.

V.

## CONCLUSION

In this proceeding, the court is being asked to judicially weigh the effect of the defendants' failure to comply with Rule 2016(a) and their disregard of this court's §1322(b)(5) order against the debtor's consenting to the defendants' forceplacing hazard insurance coverage as contemplated in the loan documentation.

The court is of the opinion that there are no material factual issues that remain in dispute. Consequently, this proceeding can be resolved through the motion for summary judgment that is under consideration.

With one significant exception, this proceeding is similar to the adversary proceeding filed by Johnny Lee Evans and Doris J. Evans against the defendants. That exception is the defendants' disregard of the §1322(b)(5) motion initiated by the Chapter 13 trustee, as well as, the subsequent disregard of the §1322(b)(5) order entered by this court. With one exception, this proceeding is similar to the proceeding initiated by Jerlene Pryor against the defendants. Without question, Jones consented to the forceplacing of insurance coverage. Whether Pryor consented to the forceplacing of coverage was never disclosed.

Absent the filing of her bankruptcy case, Jones would contractually be obligated to the defendants for the full amount of the insurance premiums in the sum of $4,524.00, excluding interest. If the court were to consider only the defendants' failure to comply with Rule 2016(a),

9

balanced against Jones' undisputed consent to the forceplacing of insurance, the court would treat this matter identically to the decision rendered in the Johnny Lee Evans and Doris J. Evans proceeding. However, in the current proceeding, the defendants ignored the trustee's §1322(b)(5) motion and disregarded the court's §1322(b)(5) order. The §1322(b)(5) proceeding has an obvious purpose, that is, to "flush out" all undisclosed charges and assessments that might have arisen during the administration of the Chapter 13 case. The failure to acknowledge this motion and order without justification merits the imposition of sanctions for intentional misconduct. The court is of the opinion that a sanction in the sum of $2,500.00 is appropriate under the circumstances. This sanction will be offset as a credit against the principal amount of insurance premiums that Jones owes to the defendants. Therefore, $2,500.00 shall be deducted from the $4,524.00 principal amount of premiums that were assessed, leaving a balance of $2,024.00. The sum of $2,024.00 shall be repaid to the defendants over a period of five years at a market rate of interest of 6% per annum. This indebtedness should be paid in equal monthly installments added to the current regular monthly installments that are due under the terms of the promissory note originally executed by Jones in favor of Jim Walter Homes, Inc. Should Jones fail to pay this indebtedness, the defendants shall be permitted to enforce their deed of trust in keeping with the requirements of state law.

A separate order will be entered consistent with this opinion.

This the 29th day of October, 2009.

DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE